WATERS ET AL., APPELLEES, *v.* NOVAK ET AL., APPELLANTS.

(No. 245—Decided May 6, 1953.)

*Mr. Virgil D. Allen, Jr.,* and *Mr. Wm. G. Batchelder, Jr.,* for appellees.

*Messrs. Bennett & Dannley,* for appellants.

HUNSICKER, J. This is an appeal on questions of law.

Robert B. Waters and his wife, Blanche L. Waters, the appellees, herein called Waters, purchased a house and lot in a suburban village from Walter J. Novak and his wife, Virginia (Julia) Novak, the appellants, herein called Novak. After Waters had occupied the home for approximately 30 days, the pump which drew the household water supply from a drilled well, ceased to function. It was then discovered that the well was not of sufficient capacity to supply the home, and it became necessary to drill another well.

At the time Waters were examining the home with a view to purchase, they inquired of Novak concerning

the quantity of water. Novak assured them that there was an abundant flow of water, sufficient in fact to supply two families, to operate a dishwasher, an automatic washing machine, and other household facilities.

When the failure of the water developed, the appellees, Waters, also learned that Novak had had trouble with the water supply, that the well did not have a good flow of water, and, as at least one witness indicated, Novak wished to sell the property because of the trouble he was having with the well.

Waters filed an action for both compensatory and punitive damages against Novak, based on the fraud, malice and insult which they claimed was committed upon them in inducing the purchase of the Novak house and lot.

The issue of compensatory and punitive damages for the fraud was submitted to the jury by the trial court, and a general verdict in the sum of $3000 was returned in favor of Waters. From the judgment rendered on such verdict, Novak has appealed to this court—claiming, among other errors, that the verdict and judgment are not sustained by the evidence, and that the trial court should not have submitted the question of punitive damages to the jury.

There was a great conflict in the testimony, but after a careful reading of the bill of exceptions, this court cannot come to a unanimous conclusion that the verdict was against the manifest weight of the evidence submitted to the jury.

The principal problem in this appeal is: May punitive damages be allowed in this case of fraud in the sale of the real property in question?

The rule in Ohio, with respect to the liability of a vendor, who, by reason of false representations as to character, utility, value and quality of land, disposes of such land, is found in the case of *Drew* v. *Christopher Construction Co., Inc.,* 140 Ohio St., 1, 41 N. E.

(2d), 1018, wherein the first paragraph of the syllabus says:

"1. Where false representations of a vendor made as positive statements of facts clearly implying his knowledge of the truth thereof induced a purchaser to buy and pay for a residence property and such representations were material, being of such a nature as to affect the character, utility and value of the property, and were then known by the vendor to be untrue, but were relied upon by the purchaser as true, he may maintain an action to recover the damage sustained as a result thereof."

An annotation and collation of cases on the subject of liability for fraud, predicated upon the vendor's misrepresentation of the physical condition of real property, is found in 174 A. L. R., 1010. Ohio has consistently followed the general rule on this subject.

In the case of *Molnar* v. *Beriswell,* 122 Ohio St., 348, 171 N. E., 593, the court said:

"1. The measure of damages resulting from a sale induced by a vendor's fraudulent representation is the difference between the actual value of the property at the time of the purchase and its value had it been as represented."

See also: *Citizens Banking & Savings Co.* v. *Spitzer, Rorick & Co.,* 65 Ohio App., 309, at p. 333, 29 N. E. (2d), 892; *Fiebig* v. *Brofford,* 58 Ohio Law Abs., 494, 97 N. E. (2d), 52; *Henschel* v. *Schreiber* (Ohio App.), 72 N. E. (2d), 107.

In the case of *Saberton* v. *Greenwald,* 146 Ohio St., 414, 66 N. E. (2d), 224, 165 A. L. R., 599, the court said:

"2. In an action to recover damages for a tort which involves the ingredients of fraud, malice or insult, a jury may go beyond the rule of mere compensation to the party aggrieved and award exemplary or punitive damages."

The Supreme Court of Ohio again stated the rule

with respect to punitive damages in tort cases in the case of *Smithhisler* v. *Dutter,* 157 Ohio St., 454, at p. 459, 105 N. E. (2d), 868; saying:

"The rule in Ohio seems to be that ordinarily, in tort actions, punitive damages are allowable in cases in which fraud, malice or insult appears, that such damages may be allowed even though the defendant may have been punished criminally for the same wrong, and that reasonable counsel fees for the prosecution of the action may be included therein."

In the first paragraph of the syllabus of that case, the court said:

"1. In tort actions, the question of punitive damages may not ordinarily be submitted to a jury in the absence of actual malice."

In the well-considered case of *Greene* v. *Keithley,* 86 F. (2d), 238, decided by the Federal Circuit Court of Appeals of the Eighth Circuit, the court said, at p. 242, after a review of the leading authorities:

"We conclude that exemplary damages may be recovered in tort actions on the case based on conspiracy or on deceit, provided, of course, a petition contains the necessary averments showing a right to recover such damages in addition to compensatory damages."

The court in that case examined the case of *Peckham Iron Co.* v. *Harper,* 41 Ohio St., 100, wherein it was determined that:

"2. Exemplary damages may be allowed, where an agent by false and fraudulent representations to his principal, obtains possession of his principal's goods and converts them to his own use."

In the instant case the petition alleged that the fraudulent misrepresentations of Novak "were made maliciously and fraudulently by defendants (Novak), with insult and intent to deceive and defraud these plaintiffs (Waters)." The petition also alleged in

other instances the fraud, malice and insult of Novak in making the sale of the property in question.

The trial court, after submitting the issue of compensatory damages according to the rule established in Ohio, said:

"If you find that compensatory damages are due the plaintiffs, then you will consider further as to the claim of the plaintiffs for exemplary or punitive damages. Bare fraud never entitles the parties injured to exemplary or punitive damages, but such damages may be recovered only where the preponderance of all the evidence shows a gross or malicious fraud, or something showing a very corrupt condition of affairs. Malice consists of bad motive, or such wanton and reckless disregard of the rights of others as to show evil intent. If you find by a preponderance of all the evidence these elements which are a basis for exemplary or punitive damages to be present in this case, then, if you think proper, you may go beyond mere compensation and award exemplary or punitive damages as a matter of right, even though you find fraud and misrepresentation on the part of the defendants. Punitive damages are entirely within your discretion, to allow or refuse, for the purpose of punishment to the defendants, and as a deterrent or preventative for committing like acts in the future, if you find that the evidence discloses such conduct on the part of the defendants to make it proper to punish the defendants therefor. In no event will the plaintiffs be entitled to recover more than the amount claimed in their petition.

"As previously stated, you will not consider or award any punitive damages unless you have first found damages otherwise due the plaintiffs.

"If you find that the plaintiffs are entitled to exemplary or punitive damages, you may include in the amount of your verdict a reasonable attorney's fee for

plaintiffs' counsel, but such attorney's fee, if any, is to be included as part of the compensatory damages, and not as part of the exemplary damages."*

Did the trial court, therefore, by this charge, define the malice that was necessary to submit the issue of punitive damages in the instant action? For we conclude that, upon proper allegations and proof, punitive damages may be awarded in a tort action based upon the sale of real property, where such sale was procured as a result of the fraudulent representations of the vendor. We therefore return to the question as to whether implied malice or actual malice was the essential ingredient which would justify the submission of the issue of punitive damages in the instant case.

As was said in the case of *Smithhisler* v. *Dutter, supra,* at p. 459—''There is a division in the authorities as to whether there must be actual malice upon the part of a defendant or merely legal malice in order to justify punitive damages.'' And the court said further at p. 461:

''The rule as to malice is stated as follows by Judge Hart in his dissenting opinion in the *Saberton case, supra,* and there was no division upon this statement:

'' 'This court has, over the years, recognized the

---

*Since the announcement of this decision, we have been informed by the trial judge that the bill of exceptions does not accurately set forth the middle sentence of the first paragraph of the charge above quoted. The trial judge states that that part of the charge, as given by him, was as follows:

"If you find by a preponderance of all the evidence these elements which are a basis for exemplary or punitive damages to be present in this case, then, if you think proper, you may go beyond mere compensation and award exemplary or punitive damages. The plaintiffs are not entitled to exemplary or punitive damages as a matter of right, even though you find fraud and misrepresentation on the part of the defendants."

The charge as actually given was, of course, a more complete and more accurate way of stating the proposition involved.

propriety of submitting to a jury the question of the assessment of punitive damages in certain tort cases where the defendant's wrongdoing has been intentional and deliberate, or has the character of outrage frequently associated with crime.

" 'Not all tort actions are of such a character as to warrant the assessment of punitive damages. Generally the application of the doctrine is confined to cases where there is involved actual malice, interference with marital relations, or wanton personal injury, such as in cases of seduction, assault and battery, false imprisonment, or wrongful expulsion from public passenger vehicles or places of public entertainment.' "

In the case of *Cable* v. *Bowlus,* 21 C. C., 53, 11 C. D., 526, affirmed without opinion in *Bowlus* v. *Cable,* 69 Ohio St., 563, 70 N. E., 1115, the court said:

"6. Punitive damages for fraud can only be recovered where there is a gross or malicious fraud, or something showing a very corrupt condition of affairs, but not for a bare case of fraud."

The Supreme Court of the United States has recognized that "whenever the injury complained of has been inflicted maliciously or wantonly, and with circumstances of contumely or indignity, the jury are not limited to the ascertainment of a simple compensation for the wrong committed against the aggrieved person." *Scott* v. *Donald,* 165 U. S., 58, at p. 89, 41 L. Ed., 632, at p. 638, 17 S. Ct., 265, at p. 268.

Some states, such as Missouri, are committed to the proposition that in cases of fraud inducing the sale of real or personal property, the malice necessary to be shown to justify an award of punitive damages is legal malice and not actual malice (*Finke* v. *Boyer,* 331 Mo., 1242, 56 S. W. [2d], 372; *Menke* v. *Rovin,* 352 Mo., 826, 180 S. W. [2d], 24), while in others, such as New York, the rule as set out in *Oehlhof* v. *Solomon,*

73 App. Div., 329, at p. 333, 76 N. Y. Supp., 716, at p. 719, is that actual malice must be shown in cases similar to the instant action. In some states, such as California and Oklahoma, there are special statutes on this subject.

The textwriters on the subject also point out the wide variety of opinions on this subject of what the nature of the malice shall be which justifies the award of punitive damages for a fraudulent representation inducing the sale of real property.

2 Sutherland on Damages (Fourth Ed.), Section 393, says (at p. 1280):

"These damages [*i. e.*, punitive damages] are allowable only when there is misconduct and malice, or what is equivalent thereto. A tort committed by mistake, in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness or negligence as evinces malice or conscious disregard of the rights of others will not warrant the giving of damages for punishment where the doctrine of such damages prevails."

In 1 Sedgwick on Damages (Ninth Ed.), Section 364, the author says:

"Actual malice in the commission of a wrongful act is a cause for exemplary damages. * * *

"The existence of such malice as will justify the infliction of exemplary damages is of course a question of fact; and the malice must be actual, not constructive or, as it is often called, implied."

See also, 4 Restatement of the Law of Torts, Section 908, Comment "*b*."

We conclude, therefore, on the question as to the nature of the malice in actions of the kind involved in the instant case, that the better rule is that such malice must be, as was determined in the case of *Greene* v. *Keithley, supra,* at p. 243, construed to be "not simply

the 'doing of an unlawful or injurious act,' * * * but as going further and meaning 'evil motive, actual malice' * * * in the sense of 'a spirit of mischief or criminal indifference to civil obligations' * * *.''

Did the trial court, in its charge on the subject of the nature of the malice necessary to be established in the instant case, correctly state the issue?

Malice, as we speak of it in the law of Ohio, is of two kinds—express, or, as it is also called, actual, and implied, or, as it also is called, legal, malice.

Legal malice has been stated to be ''the intentional doing of a harmful act without legal justification or excuse or, in other words, the wilful violation of a known right.'' *Reichman* v. *Drake,* 89 Ohio App., 222, 100 N. E. (2d), 533.

''3. Hatred, ill will or actual malice towards the injured party is not a necessary ingredient of legal malice as applied to torts, nor is it necessary that the act complained of proceed from a spiteful, malignant or revengeful disposition. If it be wrongful, unlawful and intentional and the natural and probable result of the act is to accomplish the injury complained of, malice is implied.'' *Flandermeyer* v. *Cooper,* 85 Ohio St., 327, 98 N. E., 102, 40 L. R. A. (N. S.), 360, Ann. Cas. 1913A, 983.

An approved definition of express or actual malice is stated as ''an actual feeling of ill-will, and a desire to injure another; an act done with a bad motive, or with a wicked intention.'' *Alliance Review Publishing Co.* v. *Valentine,* 9 C. C., 387, at p. 389, 6 C. D., 323, 2 O. D., 646, affirmed without opinion, *Standard Review Publishing Co.* v. *Valentine,* 56 Ohio St., 784, 49 N. E., 1117. See also, *Simpson* v. *McCaffrey,* 13 Ohio, 508, at p. 522.

In the case of *Pfoh* v. *Whitney* (Ohio App.), 62 N. E. (2d), 744, at p. 754, Judge Morgan of the Eighth Ap-

pellate District declared express malice to be spite, ill-will, malevolence or hatred. An examination of the authorities in this and other jurisdictions with respect to the definition of malice, express malice, actual malice, malice in law, implied malice, and constructive malice, all of which have at various times been defined, shows a great confusion of terms and a lack of the clarity which we desire herein.

In an article by Ernst Freund, of the University of Chicago, on "Malice and Unlawful Interference," in 11 Harvard Law Review, 449, at p. 461, the author says:

"To say that malice is an unlawful purpose to cause damage and loss, without right or justifiable cause, is to tell us nothing that is specific of malice, for these elements belong to every intentional tort, and it is desirable to define malice as a tort *sui generis*. As such malice ought to mean in law what it means in fact, the intentional infliction of damage through personal ill-will or spite, for purposes of revenge, or for illegitimate and corrupt personal ends."

The subject of express and implied malice is discussed in 34 American Jurisprudence, Malice, Section 3, wherein the author says:

"The line of demarcation between express and implied malice is not always clearly defined, and in some instances the distinction lies only in the evidence by which the existence of malice is established."

It might be well to point out the definition of actual malice in two prominent jurisdictions in this country. New York says in *Hoeppner* v. *Dunkirk Printing Co.*, 254 N. Y., 95, at p. 106, 172 N. E., 139, at p. 142, 72 A. L. R., 913:

"By actual malice is meant 'personal spite or ill will, or culpable recklessness or negligence.' "

And Massachusetts says in *Gott* v. *Pulsifer*, 122 Mass., 235, at p. 239, 23 Am. Rep., 322, at p. 325:

"Malice [active] in uttering false statements may consist either in a direct intention to injure another, or in a reckless disregard of his rights and of the consequences that may result to him."

Viewed in the light of the recognized definitions of actual malice, the trial court, in the instant case, gave to the jury a sufficiently accurate definition and required of the jury that they find such malice to exist before they could award punitive or exemplary damages. There was no request that the court elaborate on this definition or requirment, and no special requests before argument on this subject were submitted by either of the parties. Under the circumstances herein, we do not consider that the trial judge committed prejudicial error in charging the jury as he did on the subject of actual malice.

We therefore determine that, where a vendor of real property makes false and fraudulent representations concerning the available supply of water on the premises he is selling, which representations the vendor knows to be untrue and which representations the vendee relies upon, and by means of such false and fraudulent representations induces a vendee to buy and pay for the real property, an action in tort for damages may be maintained against the vendor; and that, where the vendor was motivated by actual malice, the jury may, if the allegations and proof establish such malice, properly consider the issue of exemplary damages and make an award therefor.

The judgment is affirmed.

*Judgment affirmed.*

STEVENS, J., concurs.

DOYLE, P. J., dissenting. I respectfully dissent from the conclusions of my associates.

While recognizing the authority of the Ohio cases cited, I find none of them authority for an allowance of punitive damages growing out of breach of contract in the sale of real property.

The petition of the plaintiff was apparently drawn to sound in tort; nevertheless, the operative facts sound in contract.

I do not favor the extension of the rule of punitive damages to cases falling within this pattern. No Ohio precedent compels it.

See: *Ketcham* v. *Miller,* 104 Ohio St., 372, 136 N. E., 145; and 84 A. L. R., 1345, annotation.