Charles J. NAGEL et al., Plaintiffs,

v.

PRESCOTT & COMPANY et al.,
Defendants.

No. C 63–700.

United States District Court
N. D. Ohio, E. D.
Dec. 2, 1964.

Paul Mancino, Cleveland, Ohio, for plaintiffs.

Daniel W. Hammer, John H. Melcher, Thompson, Hine & Flory, Cleveland, Ohio, for defendants.

CONNELL, Chief Judge.

This action arises out of the plaintiffs' investment in the stock of Crowell-Collier Company. Acting upon the alleged guarantee of the defendants that said stock would produce an imminent windfall, the plaintiffs invested heavily in Crowell-Collier stock. As the stock declined in value, the plaintiffs were forced to sell out at a substantial loss. The plaintiffs now complain that the guarantee which the defendants proffered was ill-founded, and they seek to repair their damage at the expense of the defendants because of some alleged misrepresentations by the defendants in connection with the alleged "guarantee." Their action here is predicated upon the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa.

The plaintiffs have propounded extensive interrogatories, to which the defendants have made partial reply. The defendants object strenuously to thirty-two of these interrogatories, questioning the relevance of all and resisting the burdensomeness of most. The challenged inquiries cover a wide range of subjects, extending from the relationship of the defendants with regulatory agencies, to the relationship, if any, between the defendants and Crowell-Collier Company. Before addressing those interrogatories which give rise to serious issues, we must at the outset sustain objection to those questions which are so patently irrelevant that no extensive commentary nor question-by-question analysis is required.

█ █ In an action based upon the Securities Act, it is unnecessary for the defendants to recite in detail the various state and federal agencies under whose watchful eye they must function, nor must they describe the nature of that regulation. Although we disagree

with the defendants' contention that the plaintiffs are precluded from enlarging their complaint to include an alleged violation of state law [1], we would not require the defendants to prepare answers to questions which relate only to potential issues. Therefore, we sustain the objections to Interrogatories Nos. 5, 8 through 13 and 18.

The plaintiffs also seek to elicit information concerning the internal organization of the defendant Prescott & Company, its general research and sales policies, and the individual expertise of the men who formulate and execute those policies. Although we concede that these questions might at least lead to relevant and admissible evidence, we think that the relevant information which might be gleaned from the response to these interrogatories might better be found in the answers to other interrogatories which the plaintiff has advanced. We are concerned in this lawsuit with transactions involving the sale of particular shares of stock; the plaintiffs have attacked the conduct of the defendants only in connection with those transactions. To require the defendants to outline their entire mode of operations and qualify their entire staff would visit an unconscionable burden upon them. Therefore, we will sustain the objections to Interrogatories Nos. 4, 19 through 25, 50, 51 and 56.

For the reasons cited in the preceding paragraph, we will not compel answers to inquiries directed to transactions between the parties other than those which are the subject of complaint. Objections to Interrogatories Nos. 29 through 32 will be sustained.

We turn now from the irrelevant to the relevant, from the objectionable interrogatories to the proper. In support of their general objection to the scope of the plaintiffs' inquiry, the defendants have stated the issues thus:

> "Based on the allegations contained in their complaint, the only issues that are properly cognizable by this Court are as follows·: first, whether defendant in fact guaranteed that plaintiffs would make money if they purchased Crowell-Collier stock; second, if such a guarantee were made, whether plaintiffs lost money on this stock; and third, whether this guarantee and subsequent loss gives a cause of action under the Securities Act of 1933. Under the present state of the pleadings, there are no other issues, and any attempt by plaintiffs to create additional issues is improper and without legal justification." (Dft. Reply Br. p. 2)

We are not wholly in agreement with the defendants when they over-simplify the nature of the lawsuit. Paragraphs 6 and 7 of the complaint are couched in the terminology of Section 12 of the Securities Act, 15 U.S.C. § 77l, which reads:

> "Any person who—
>
> \* \* \* \* \* \*
>
> "(2) offers or sells a security \* \* by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,
>
> shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any

---

[1]. Cf. Dft.Br. p. 3. It is clear that Congress did not intend to preempt the field of securities regulation to the exclusion of state regulation. 15 U.S.C. § 77p specifically preserves any other remedies at law or equity. See: Independence Shares Corp. v. Deckert, 108 F. 2d 51 (3rd Cir. 1939), rev'd on other grounds, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940).

court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security. May 27, 1933, c. 38, Title I, § 12, 48 Stat. 84; Aug. 10, 1954, c. 667, Title I, § 9, 68 Stat. 686."

So the issue is not simply whether a guarantee was made which resulted in injury to the plaintiffs; the plaintiffs have alleged that the defendants overtly misrepresented the entire situation and, by failing to employ full candor, omitted material facts which induced the plaintiffs to invest in Crowell-Collier. These alleged sins of omission and commission draw into controversy the extent of information which the defendants had at the time they advised the plaintiffs to invest. Thus it is perfectly proper for the plaintiffs to inquire as to whether the defendants received any financial statements from Crowell-Collier (Interrogatory No. 38), or any one else (Interrogatory No. 39). It is perfectly proper for the plaintiffs to inquire whether any member of the defendant firm received any information from a source connected with Crowell-Collier (Interrogatory No. 49), or from any source (Interrogatories Nos. 48 and 54).

It is also proper for the plaintiffs to inquire whether the defendants ever published any literature concerning Crowell-Collier Company and the sources upon which such literature might have been based. (Interrogatories Nos. 46 and 47).

These interrogatories also relate to another issue which the plaintiffs have properly framed by their complaint: whether the plaintiffs, if successful, would be entitled to punitive damages. Recovery of exemplary damages hinges upon the plaintiffs' ability to prove that the defendants were motivated by actual malice in allegedly misrepresenting the investment picture to the plaintiffs.

Although there is no provision in the Securities Act authorizing recovery of punitive damages, it is clear that the plaintiffs may so recover upon a proper showing of maliciously improper conduct.[2]

The savings clause in the Securities Act, § 16, 15 U.S.C. § 77p, specifically preserves to the plaintiffs all other rights and remedies at law or in equity. Therefore, in appraising a prayer for punitive damages, we must view the allegedly fraudulent transactions in the light of local law.

Under Ohio law, in an action to recover damages for a tort which involves the ingredients of fraud or malice, a jury may go beyond the mere rule of compensation to the party aggrieved and award exemplary damages. Saberton v. Greenwald, 146 Ohio St. 414, 66 N.E.2d 224, 165 A.L.R. 599 (1946). As summarized by the Supreme Court in Smithhisler v. Dutter, 157 Ohio St. 454, 459, 105 N.E.2d 868, 871 (1952):

"The rule in Ohio seems to be that ordinarily, in tort actions, punitive damages are allowable in cases in which fraud, malice, or insult appears, that such damages may be allowed even though the defendant may have been punished criminally for the same wrong, and that reasonable counsel fees for the prosecution of the action may be included therein."

Of course, the mere mention of punitive damages in the prayer of a

---

**2.** The savings clause in the Securities Act is unlike the savings clause in the Securities Exchange Act, Sec. 28, 15 U.S.C. § 78bb, which specifically limits the plaintiff to recovery of his actual damage in an action brought under the 1934 act. Thus it has been held that punitive damages may not be recovered in an action brought under the Securities Exchange Act. Meisel v. North Jersey Trust Co., 216 F.Supp. 469 (S.D.N.Y.1963); see also: Derdiarian v. Futterman Corp., 223 F.Supp. 265 (S.D.N.Y.1963).

complaint is an insufficient basis for the recovery thereof and is inadequate to open the way to discovery of the essential elements upon which such a recovery must be based. The complaint must contain the necessary averments showing the right to recover such damages in addition to compensatory damages. Waters v. Novak, 94 Ohio App. 347, 350, 115 N. E.2d 420 (1953). Cf. F.R.Civ.P. Rule 9 (b). Paragraph 9 of the complaint accuses the defendants of willful and malicious misrepresentations designed to increase the number of transactions and the amount of their commissions. The complaint also accuses the defendants of taking advantage of plaintiff Charles J. Nagel because of his ill health. We think that these averments, if susceptible of proof, might be a proper foundation for an award of exemplary damages.

 In connection with the interrogatories to which the defendants object, we think that they relate to the issues raised by Paragraph 9 of the complaint. Interrogatory No. 43 seeks information concerning the amount of commissions earned by defendants from the sale of Crowell-Collier stock to plaintiffs. Inasmuch as the plaintiffs have averred that the expectation of higher commissions was the motive which prompted the defendants' actions, this information is relevant and the objection is overruled.

Our attention is next addressed to Interrogatory No. 52, which reads:

"Did your firm or any member or employee of your firm have any options, warrants or stock of the Crowell-Collier Company? If so, state the details thereof."

Plaintiffs are obviously attempting to discover whether the defendants were relieving themselves from a precarious position to the disadvantage of the plaintiffs. If the plaintiffs could establish as a fact that the defendants were not disinterested middlemen, this might support their contention of actual malice. There-

fore we will also overrule the objection to Interrogatory No. 52.

In summary, it is

Ordered that the defendants' objections to the following interrogatories are sustained:

4, 5, 8 through 13, 18 through 25, 29 through 32, 50, 51 and 56.

It is further ordered that the objections to Interrogatories Nos. 38, 39, 43, 46 through 49, 52 and 54 are overruled, except in so far as they seek to elicit the contents of certain documents. Interrogatories under Rule 33 are not a proper avenue by which parties may secure contents of documents. To secure contents of these documents the plaintiffs must move under Rule 34 for their production and establish that good cause exists for their production.