Eleanor L. FITZGERALD, Appellant,

v.

CENTURY PARK, INC., an Oregon Corporation, Appellee.

No. 78–2593.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 2, 1980.

Decided April 20, 1981.

Donald A. Bick, Bick & Monte, P.C., Eugene, Or., on brief, for appellant.

Gregory R. Mowe, Davies, Biggs, Strayer, Stoel & Boley, Portland, Or., on brief, for appellee.

Before ALARCON and CANBY, Circuit Judges, and HOFFMAN, Senior District Judge.*

CANBY, Circuit Judge.

Appellant, Eleanor Fitzgerald, on behalf of herself and others similarly situated, appeals a summary judgment granted by the district court to Century Park, Inc., an Oregon land developer. Appellant's claim is brought under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq., and arises from alleged misrepresentations made by Century Park in the sale of lots in a subdivision for mobile homes.

The district court ruled that no member of the class suffered cognizable damages under § 1709(c) of the Act[1] because the increase in value of the lots more than offset any losses appellants might have incurred. Fitzgerald contends that the trial court erred by limiting damages to "out of pocket" losses and refusing to allow "benefit of the bargain" damages. Alternatively, she urges that even if we conclude that damages are not available, we nevertheless remand for trial on the issue of nominal damages. We reject both arguments and affirm.

Fitzgerald filed this action in March of 1976 alleging damages resulting from untrue statements of material fact contained in the Property Disclosure Report provided by Century Park in connection with the sale of lots in Florence, Oregon. The Report included the following statement with respect to special assessments:

> Buyer should be aware that state law grants the power to make special assessments to various governmental units including different types of public service districts. At the time of this filing, no property . . . is subject to any such special assessment.

Fitzgerald asserts that this statement and a claim that there would be no installation or hookup charges for any facilities other than telephones were untrue because of the prior adoption of Municipal Ordinance No. 531. Ordinance No. 531 provided a framework by which the City of Florence could pass on to property owners charges for enlargement of street, sewer and water facilities required by new development. The ordinance did not establish fees. Those were fixed by a subsequent resolution of the Florence City Council enacted after appellants purchased their lots. The fee ultimately imposed was $320 per lot.

---

* The Honorable Walter E. Hoffman, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. Until its amendment after this suit was initiated, 15 U.S.C. § 1709 (1970) provided:

    (b) Any developer or agent who sells or leases a lot in the subdivision . . .

    (2) By means of a property report which contained an untrue statement of material fact or omitted to state a material fact required to be stated therein, may be sued by the purchaser of such lot.

    (c) The suit authorized under subsection . . . (b) of this section may be to recover such damages as shall represent the difference between the amount paid for the lot and the reasonable cost of any improvements thereto and the lesser of (1) the value thereof as of the time such suit was brought, or (2) the price at which such lot shall have been disposed of in a bona fide market transaction before suit, or (3) the price at which such lot shall have been disposed of after suit in a bona fide market transaction but before judgment.

Century Park moved for summary judgment. The district court granted the motion on the ground that no class member suffered any cognizable damages under 15 U.S.C. § 1709(c) because all lots in the subdivision had appreciated by at least $320 between the time of the purchase and the time this action was brought.

(a) Damages under § 1709(c).

■ At the times relevant to this litigation, § 1709(c) provided that suit for misstatements or omissions in a required property report "may be to recover" damages representing the difference between the price paid for a lot and its improvements and (where the purchaser still owns the property) the market value of the lot and improvements at the time suit is brought. Because that measure of damages clearly provides no relief for appellant and her class, whose lots appreciated to a value in excess of their purchase price, she contends that the word "may" in § 1709(c) indicates that the measure prescribed there is not the exclusive one, but is simply one option. She contends that she and her class should be afforded damages representing the "benefit of the bargain," which would place them in as good a position as they would be had the $320 assessment never been imposed. Alternatively, she argues that even if the language of § 1709(c) does not so suggest, we should imply into the Act, as a new remedy, benefit of the bargain damages. Both arguments are without merit.

Neither the language of the Act nor the legislative history indicates that Congress intended to afford purchasers benefit of the bargain damages. The primary congressional concern, as expressed in the Senate Committee Report, appears to have been to compensate purchasers, who may have lost their life savings by investing in fraudulent land sales, for their actual, out of pocket, losses. Report of the Committee on Banking and Currency, United States Senate, to accompany S.3497, Housing and Urban Development Act of 1968, Senate Report No. 1123, 90th Congress 2d Sess. at 103.

Nor will we imply benefit of the bargain damages into the Act. The Act expressly provided a particular remedy; there is no justification for creating others. *National Railroad Passenger Corp. v. National Association of Railroad Passengers*, 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974).

(b) Effect of the 1979 amendments.

■■ In 1979, after this suit was commenced, Congress enacted a comprehensive revision of the Interstate Land Sales Act. Included was an amendment of § 1709 to permit a more liberal measure of damages so that the effects of inflation would not inevitably defeat recovery.[2] The question therefore arises whether this amendment is to be applied retroactively to the present suit. In general, an appellate court applies the remedial law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary. *Bradley v. School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974); *United States v. Fresno Unified School District*, 592 F.2d 1088, 1093 (9th Cir.) *cert. denied*, 444 U.S. 832, 100 S.Ct. 62, 62 L.Ed.2d 41 (1979). We think that retroactive application of the amendment to § 1709 is contrary to the intent of the revision and its legislative history. We consequently decline to apply it to the present litigation.

■ The 1979 amendments did not merely liberalize the damages provision of § 1709(c); they changed the liability provisions of the Act and exempted some devel-

---

**2.** The amended section, 15 U.S.C. § 1709 (1979) provides:

   (a) ... In a suit authorized by this subsection, the Court may order damages, specific performance, or such other relief as the Court deems fair, just, and equitable. In determining such relief, the Court may take into account, but not be limited to, the following factors: The contract price of the lot or leasehold; the amount the purchaser or lessee actually paid, the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the fair market value of the lot or leasehold at the time such lot was purchased or leased.

opers who were previously subject to the disclosure provisions. 15 U.S.C. § 1702(b) (1979). The amendments to the liability and damages provisions of the Act were interrelated. We believe that Congress made clear its intent that both should be applied prospectively when it specified that the amendments (with one exception not relevant here) should become effective "on the effective date of regulations implementing such amendments, but in no case later than six months following the date of enactment...." P.L. 96–153, § 410, 93 Stat. 1132 (1979). It is unlikely that Congress would delay the effective date of amendments which are to be applied retroactively.

Indeed, the conference report on the amendments expressly indicates that the liability portions of the Act were to be prospective, for it states that "[t]he conferees intend that the transition for exemptions and requirements under present law to the amended law should not affect real estate already sold or leased as of the exective (sic) date of the amendments." House Conference Report No. 706, 96th Cong., 1st Sess. 82; [1979] U.S.Code Cong. & Admin. News, 2317, 2402, 2441. If, as the conferees clearly intended, the exemption amendments are to be prospective only, then to apply the damages amendments retroactively could lead to a developer's being subjected to expanded damages imposed by a revision of the Act which prospectively exempted that developer from coverage. We doubt that Congress intended to permit that result. While it is not clear in the present case that Century Park would fall within the new exemptions, the prospect of such an occurrence militates against the view that the amendment to § 1709 is to be applied retroactively. We consequently conclude that its effect is prospective only.

(c) Remand for Nominal damages.

■ Fitzgerald's request for nominal damages is raised, for the first time, on appeal to this court. We decline to consider arguments not presented to the district court unless circumstances indicate that in-

justice might otherwise result. *Friedman v. Commissioner*, 627 F.2d 175, 177 (9th Cir. 1980); *In re U. S. Financial Inc.*, 594 F.2d 1275, 1282 (9th Cir. 1979). We find no injustice here. The decision of the district court is accordingly affirmed.