**Joseph HADAD and Sylvia Hadad, Plaintiffs,**

v.

**The DELTONA CORPORATION, a Florida Corp., Defendant.**

Civ. A. No. 80–2052.

United States District Court,
D. New Jersey.

April 13, 1982.

Laurence I. Tomar, Tomar, Kamensky & Smith, Trenton, N.J., for plaintiffs.

Richard L. Angelini, Kivler & Halper, Trenton, N.J., for defendant.

## OPINION

DEBEVOISE, District Judge.

On July 1, 1980 plaintiffs, Joseph Hadad and Sylvia Hadad, citizens of New Jersey, instituted this action against The Deltona Corporation, a Florida corporation, charging that plaintiffs suffered injury by reason of Deltona's violation of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, *et seq.* (Count I), breach of contract (Count II), and fraudulent misrepresentations (Count III). The action arises out of a sale of Florida real estate.

On January 24, 1976 plaintiffs and Deltona entered into two contracts pursuant to which plaintiffs agreed to buy and Deltona agreed to sell two contiguous parcels of real estate located in Marin County, Florida. Plaintiffs were given a Florida Public Offering Statement prepared by Deltona. Payment was to be made in installments over a period of three years. The contracts provided that within 90 days following the final payment Deltona would deliver to plaintiffs warranty deeds, paved streets abutting the property, a central water system, and a policy of title insurance.

The contracts also provided that Deltona was to retain title until all promised improvements had been completed and payment had been made in full, and that if plaintiffs failed to comply with the terms of the contracts Deltona had the right to cancel them and retain all monies paid as liquidated damages. Finally, the contracts stated that the purchase was governed by the laws of Florida, that if Deltona was unable to meet any of its obligations under the contracts it would return all monies paid, with interest, thus releasing both parties from any further obligations, and that the contracts constituted the entire agreement, there being no other representations except those made therein and in Deltona's advertisements.

On January 22, 1979 plaintiffs made their last payment, the total amount of their payments being $14,648.17, but to this day Deltona has not delivered warranty deeds to plaintiffs or caused the improvements to be made. Deltona has offered to refund the $14,648.17 with interest, as provided in the contracts. Plaintiffs charge that at the outset, when the contracts were entered into, Deltona knew that it could not complete the improvements within the time required.

Defendant moved for summary judgment on the complaint, asserting that Count I is barred by the Interstate Land Sales Full Disclosure Act statute of limitations, that Florida law applicable in this case limits recovery on Counts II and III to a return of the money paid plus interest and costs of investigating title, that neither Florida law nor the Interstate Land Sales Full Disclosure Act permit recovery of punitive damages, and that proceedings taken by the Florida Division of Land Sales and Condominiums precludes this Court from exercising jurisdiction over the action.

At the hearing on defendant's motion I ruled that the Florida proceedings do not preclude this Court from exercising jurisdiction; I reserved decision on the questions whether Count I is barred by the statute of limitations contained in the Interstate Land Sales Full Disclosure Act and whether the Act permits recovery of punitive damages; and I asked for further briefing and argument of the other questions raised by the motion.

This opinion disposes of the two questions on which decision was reserved.

### Original Statute of Limitations

The Interstate Land Sales Full Disclosure Act (the "Original Act") was enacted in 1968. 15 U.S.C. § 1701, et seq. It contains anti-fraud provisions. It also contains registration and disclosure requirements for developers involved in nonexempt land transactions. The "Statement of Record" which such a developer must file must set forth information necessary for the protection of purchasers. In addition, the devel-

oper must deliver to each purchaser a "property report" containing specified information.

The anti-fraud provisions of the Original Act are set forth in § 1703(a)(2). The registration and disclosure requirements of the Original Act are set forth in § 1703(a)(1) and § 1703(b).

Civil liabilities and remedies for violation of the Original Act are created in § 1709. Section 1709(a) provides that where a statement of record contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein a purchaser may sue the developer. Section 1709(b) provides that a developer or his agent may be sued by a purchaser (1) for a sale in violation of § 1703, and (2) for a sale by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein.

The Original Act contained a statute of limitations, § 1711, which was geared to the claims created in § 1709. It limited actions to enforce a liability created by § 1709(a) (false statements of record) and § 1709(b)(2) (false statements in property reports) to actions "brought within one year after discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence". It limited actions to enforce a liability created under § 1709(b)(1) (a sale in violation of § 1703) to actions "brought within two years after the violation upon which it is based". Further, § 1711 provided that "[i]n no event shall any such action be brought by a purchaser more than three years after the sale or lease to such purchaser".

The statute of limitations and other provisions of the Original Act were amended in 1979 (the "Amended Act"), effective on the effective date of regulations implementing such amendments, but in no case later than six months after December 21, 1979, i.e., June 21, 1980 (less than two weeks before the complaint was filed in this action). Deltona asserts that the statute of limitations

contained in the Original Act is applicable and that it bars this action. Deltona argues that § 1711 prohibits any action instituted more than three years after the sale to the purchaser, that the contract of sale in the present case was executed on January 24, 1976, and that suit was instituted on July 1, 1980, more than three years after the sale. Plaintiffs assert that the Amended Act has retroactive effect and therefore is controlling, but that, in any event, neither the Original Act nor the Amended Act bars their claims.

In order to determine whether plaintiffs' claims are barred by the Original Act, the nature of their claims must be analyzed. As recited above, the contract of sale obligated Deltona to deliver to plaintiffs within 90 days following the final payment a warranty deed, paved streets abutting the property, a central water system, and a policy of title insurance. Plaintiffs charge that at and prior to the execution of the contracts Deltona affirmatively represented that the property would be developed and conveyed on schedule although it knew it had not obtained governmental approvals required to develop the land, it was behind schedule on thousands of other contracts, and otherwise was aware that it could not perform as required by the contracts, all for the purpose of inducing plaintiffs to sign the contracts. Plaintiffs allege that they relied on these misrepresentations and concealments.

These allegations, if true, give plaintiffs a right of action under § 1709(b)(1) of the Original Act (which incorporates by reference § 1703 of the Original Act): (i) on account of Deltona's employment of a device, scheme or artifice to defraud (§ 1703(a)(2)(A)); (ii) on account of Deltona's obtaining money by means of a material misrepresentation with respect to any information included in the property report or with respect to any other information pertinent to the lots (§ 1703(a)(2)(B)); and (iii) on account of Deltona's engaging in a transaction, practice or course of business which operated as a fraud or deceit upon plaintiffs (§ 1703(a)(2)(C)).

In addition, plaintiffs' allegations, if true, give plaintiffs a right of action under § 1709(b)(2) of the Original Act on account of Deltona's sale of the lots by means of a property report which contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein.

Under § 1711 of the Original Act the following time limits were applicable: (i) *The § 1709(b)(1) claims*—the action must be brought within two years after the violation upon which it is based. (ii) *The § 1709(b)(2) claims*—the action must be brought within one year after discovery of the untrue statement or the omission, or after such discovery should have been made; and (iii) *Both the § 1709(b)(1) and the § 1709(b)(2) claims*—the action may not be brought more than three years after the sale to plaintiffs.

■ Applying the two-year period to plaintiffs' § 1709(b)(1)–§ 1703 fraud claims, a finder of the facts could find that the fraud continued until the date of plaintiffs' last payment on the contracts—January 22, 1979. If so, that is the date from which the two-year statute of limitations runs. *Fogel v. Sellamerica, Ltd.*, 445 F.Supp. 1269, 1274–1275 (S.D.N.Y.1978); *Husted v. Amrep Corp.*, 429 F.Supp. 298 (S.D.N.Y.1977). Suit was instituted on July 1, 1980, less than two years after the statute commenced to run.

■ Applying the one-year period to plaintiffs' § 1709(b)(2) claims, a finder of the facts could find that plaintiffs did not discover nor by the exercise of reasonable diligence should have discovered the untrue statements or omissions more than one year prior to July 1, 1980. *Fogel v. Sellamerica, Ltd., supra*, 1276–1277. It must be noted that plaintiffs' last payment was made on January 22, 1979, that Deltona's performance was due 90 days thereafter (about April 22, 1979), and that it may stretch one's credulity to believe that plaintiffs did not discover or should not have discovered the misrepresentations or omissions prior to July 1, 1979, but this remains a factual question not susceptible to resolution by summary judgment.

There remains the question whether the three-year blanket time limitation is applicable. Original § 1711 specifies that "[i]n no event shall any action be brought by a purchaser more than three years after the sale or lease to such purchaser". Deltona argues that the signing of the contract on January 24, 1976 was the sale date, outside the three-year period. Plaintiffs argue that the payments under the contract extended the sale date, the final payment being well within the three-year period.

■ Although it has been held that the two-year statute of limitations may be tolled, *Husted v. Amrep Corp., supra*, most cases which have dealt with the subject have held that the three-year limitation period contained in § 1711 cannot be tolled, *e.g., Newell v. High Vista, Inc.*, 479 F.Supp. 97 (M.D.Pa.1979); *Timmreck v. Munn*, 433 F.Supp. 396 (N.D.Ill.1977); but *cf., Fuls v. Shastina Properties, Inc.*, 448 F.Supp. 983 (N.D.Cal.1978).[1] If this view be correct, it is critical to determine what is the date of the "sale" within the meaning of § 1711.

In *Fogel, supra*, the Court was required to determine when the statute of limitations began to run on a § 1709(b)(1)–§ 1703(a)(1) claim (violation of the provisions making it unlawful "to sell" property unless a statement of record is in effect and a property report is furnished to the buyer "in advance of the signing of any contract or agreement for sale"). The Court held that under the terms of the statute the violation had to occur at the signing of the contract or agreement of sale and consequently the statute of limitations had to commence running at that time. It concluded that for the purposes of a § 1703(a)(1) violation "the activity which constitutes the 'sale', and commences the statute of limitations, must be the initial signing of the contract rather than the final payment of the purchase price", *id.* at 1275 (noting the definition of "sale" in the perti-

nent administrative rule, 24 C.F.R. § 1701(n), as "Any obligation or arrangement for consideration to purchase a lease or lot directly or indirectly.)

The meaning attributed to "sale" for § 1703(a)(1) purposes, however, is not dispositive of the meaning to be attributed to "sale" for § 1711 purposes. In *Husted v. Amrep Corp., supra*, the Court found it unnecessary to decide whether, for the purposes of § 1711, a sale occurs when the purchaser signs, when the seller executes the contract, or not until payments have been completed and title delivered. In *Newell v. High Vista, Inc.*, 479 F.Supp. 97 (M.D.Pa.1979), however, the Court was required to address the question. There, plaintiffs entered into an agreement to purchase real estate on November 16, 1975. On December 8, 1975 the deed of sale was executed and title conveyed. On December 6, 1976 plaintiffs made their final payment on the purchase money note. On December 8, 1978 plaintiffs filed a complaint charging violations of the Original Act.

■ Defendants in *Newell* contended that the action was instituted more than three years after the signing of the contract on November 16, 1975 and, therefore, was barred by the three-year limitation contained in § 1711. The Court noted the definition of "sale" contained in the administrative regulations and concluded that while the definition was pertinent to other inquiries under the Original Act, it did not control the statute of limitations question. The Court held that execution of the contract did not exhaust the transactions constituting a sale for statute of limitations purposes, ruling that the statute did not run until delivery of the deed.

This interpretation of § 1711 makes eminent good sense and implements the purposes of the Original Act both to provide real estate purchasers with a remedy and to

---

[1] Notwithstanding the holdings that the three-year period may not be tolled (a determination based upon the language of the statute), the doctrine of equitable estoppel may prevent a party from relying on the statute of limitations defense even though the limitation period has

run. *Bomba v. W. L. Belvidere, Inc.*, 579 F.2d 1067 (7th Cir. 1978). Plaintiffs in the present case have not made a serious attempt to establish a factual basis for the application of this doctrine.

place a definable limit upon the time within which the remedy may be pursued in court. A real estate purchaser may enter into a contract which provides for payments for a period extending beyond three years. It is quite likely that he will not discover fraudulent conduct on the seller's part until he completes the payments and calls for performance. It would be absurd to hold that he could not sue because three years had run since the signing of the contract. Both the language of § 1711 and the intent of the Original Act are implemented rationally by interpreting "sale" to include not only the signing of the agreement but also all the steps implementing the agreement up to and including delivery of the deed. Interpreting § 1711 of the Original Act in that fashion leads to the conclusion that plaintiffs' action is not barred by the three-year limitation period since they made a payment as recently as January 22, 1979 and instituted this action on July 1, 1980.

*Amended Statute of Limitations*

■ The 1979 amendments of the Original Act changed the limitations periods contained in § 1711. If applicable to this case, the impact upon plaintiffs' claims would be as follows:

There is no over-all three-year limitation period as there was in Original § 1711.

To the extent that plaintiffs rely on charges that the property report contained an untrue statement of a material fact or omitted to state a material fact required by the Amended Act in violation of new § 1703(a)(1)(C), the time limit is three years after signing of the contract of sale. New § 1711(a)(1). Thus, to the extent that plaintiffs rely on false statements or omissions in the property report without more, their claims are barred under the Amended Act, since their action was instituted more than three years after the signing of the contract. Under the Original Act claims of this nature were covered by Original § 1709(b)(2) and were required to be brought within one year after discovery of the untrue statement or omission or after such discovery should have been made,

Original § 1711. Thus, if the Amended Act's limitation period is applicable it eliminates plaintiffs' claim based solely on false statements or omissions in the property report, a claim which would have been timely under the Original Act if not discovered, or if it should not have been discovered, prior to the one-year period.

■ However, plaintiffs' essential charges are based on fraud committed both by means of misstatements and omissions in the property report and by means of other misstatements and omissions. This conduct constitutes a violation of new § 1703 (a)(2)(A), (B) and (C). *See* House Conference Report, 96 Cong. Sess. 153; (1979) U.S.Code Cong. & Admin.News, 2447, 2448. The time for bringing an action on account of conduct of this nature is three years after discovery of the violation or after discovery should have been made by the exercise of reasonable diligence. New § 1711(a)(2). This replaces the Original Act's two-year time limitation, Original § 1711, § 1709(b)(1), which, I have concluded, commenced to run upon the last payment induced by the fraud. Under this interpretation it is immaterial whether the Original Act's or the Amended Act's limitation period is applicable. It cannot be said that plaintiffs' fraud claims are barred by either limitation provision. Thus, the question of the retroactive effect of the Amended Act will not be determined at this time. *See*, however, *Fitzgerald v. Century Park, Inc.*, 642 F.2d 356 (9th Cir. 1981), which holds that the amendments are not retroactive and do not apply to transactions completed before the effective date of the amendments. *See also, Davis v. Rio Rancho Estates, Inc.*, 401 F.Supp. 1045 (S.D.N. Y.1975). Should factual issues which might require a determination of this question arise at trial, issues such as the date of discovery of the alleged fraud or which payments were induced by the alleged fraud, special interrogatories can be submitted to the jury and a determination of the retroactivity question made then.

For the reasons set forth above, Deltona's motion for summary judgment on Count I

on the ground that it is barred by the Interstate Land Sales Full Disclosure Act statute of limitations is denied.

*Punitive Damages under the Act*

Recovery of damages for violation of the provisions of the Act is treated in § 1709. The Original Act provided:

Damages recoverable

(c) The suit authorized under subsection (a) or (b) of this section may be to recover such damages as shall represent the difference between the amount paid for the lot and the reasonable cost of any improvements thereto, and the lesser of (1) the value thereof as of the time such suit was brought, or (2) the price at which such lot shall have been disposed of in a bona fide market transaction before suit, or (3) thè price at which such lot shall have been disposed of after suit in a bona fide market transaction but before judgment.

. . . . .

Amount recoverable

(e) In no case shall the amount recoverable under this section exceed the sum of the purchase price of the lot, the reasonable cost of improvements, and reasonable court costs.

The Amended Act altered these provisions, and amended § 1709 provided:

Civil liabilities—Violations; relief recoverable

(a) A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title. In a suit authorized by this subsection, the court may order damages, specific performance, or such other relief as the court deems fair, just, and equitable. In determining such relief the court may take into account, but not be limited to, the following factors: the contract price of the lot or leasehold; the amount the purchaser or lessee actually paid; the cost of any improvements to the lot; the fair market value of the lot or leasehold at the time relief is determined; and the

fair market value of the lot or leasehold at the time such lot was purchased or leased.

. . . . .

Amounts recoverable

(c) The amount recoverable in a suit authorized by this section may include, in addition to matters specified in subsections (a) and (b) of this section, interest, court costs, and reasonable amounts for attorneys' fees, independent appraisers' fees, and travel to and from the lot.

The clear language of the Original Act suggests that a purchaser suing under § 1709 is not entitled to recover punitive damages. It is difficult to attribute any other meaning to the admonition that "[i]n no case shall the amount recoverable under this section exceed the sum of the purchase price of the lot, the reasonable cost of improvements, and reasonable court costs".

That language, however, was not included in the Amended Act. In new § 1709 the manner in which damages are to be ascertained is spelled out in more general terms than was the case in the original version. The factors which a court is directed to consider, however, even though not all-inclusive, are suggestive of compensatory damages, not punitive damages—the contract price of the lot, the amount actually paid, the cost of improvements, the fair market value of the lot at the time relief is determined, and the fair market value of the lot at the time it was purchased.

In their brief plaintiffs argue that damages principles developed under the Securities Act, 15 U.S.C. § 77a, *et seq.*, should be applied here. They state that "[t]he Securities Act allows clearly for the recovery of punitive damages upon a proper showing of malice and bad faith" (at p. 12). In support of this categorical assertion plaintiffs cite *Nagel v. Prescott & Co.*, 36 F.R.D. 445 (N.D.Ohio 1974).

Plaintiffs' attorneys fail to observe that *Nagel's* holding in this regard stands virtually alone. *Nagel* was referred to and specifically rejected in *Hill York Corp. v. American Internat'l Franchises, Inc.*, 448

F.2d 680 (5th Cir. 1971). It has been held that punitive damages are not recoverable in civil actions brought under the Securities Exchange Act. 15 U.S.C. § 78a, *et seq., Meisel v. North Jersey Trust Company of Ridgewood, N.J.,* 216 F.Supp. 469 (S.D.N.Y. 1963); *Derdiarian v. Futterman Corporation,* 223 F.Supp. 265 (S.D.N.Y.1963).

It was argued in some cases that punitive damages were precluded in Securities Exchange Act cases because of the presence of 15 U.S.C. § 78bb(a), which limited recovery to actual damages on account of the act complained of. It was further argued (and the Court so ruled in *Nagel*) that the absence of that limitation in the Securities Act, together with a provision stating that the rights and remedies of the Securities Act were in addition to other rights and remedies, 15 U.S.C. § 77p, required the conclusion that punitive damages are available in civil actions brought under the Securities Act.

 With the exception of the *Nagel* Court, that argument has been rejected in the case of suits instituted under § 12 of the Securities Act, 15 U.S.C. § 77l. *Hill York Corp. v. American Internat'l Franchises, Inc., supra; see also, Klein v. Spear, Leeds & Kellogg,* 309 F.Supp. 341 (S.D.N.Y. 1970). Further, punitive damages are not allowed in Securities Act cases charging violation of Section 17(a) of the Act, 15 U.S.C. § 77q(a), which makes it unlawful to engage in fraudulent practices in the sale of securities. *Globus v. Law Research Service, Inc.,* 418 F.2d 1276 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). The reasons for this conclusion are carefully analyzed in the Court's opinion written by Judge Kaufman in *Globus.* They are applicable to suits charging fraud instituted under the Interstate Land Sales Full Disclosure Act. Sound policy and the language of the Act preclude punitive damages.

To the extent plaintiffs seek relief under that Act punitive damages will not be permitted. The applicable state law will determine whether they are entitled to claim punitive damages upon their pendent state law claims. *Flaks v. Koegel,* 504 F.2d 702 (2d Cir. 1974).

Deltona's attorneys are requested to prepare an order implementing this opinion and incorporating my earlier ruling that the proceedings before the Florida Division of Land Sales and Condominiums does not preclude this action.